IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-257-D

DANIEL R. STEVENS,                )
                                  )
            Plaintiff,            )
                                  )
   v.                             )     **ORDER**
                                  )
E.I. DUPONT DE NEMOURS            )
AND COMPANY,                      )
                                  )
            Defendant.            )

Daniel R. Stevens ("Stevens" or "plaintiff") is a former employee of E.I. DuPont de Nemours and Company ("DuPont" or "defendant"). Stevens (who proceeds pro se) contends that DuPont committed fraud, constructive fraud, and negligent misrepresentation while negotiating his separation agreement. The alleged fraud, constructive fraud, and negligent misrepresentation concern the monthly cost of Steven's retirement health care under DuPont's Medical Care Assistance Program ("Plan"), an "employee welfare benefit plan" under the Employment Retirement Income Security Act of 1974 ("ERISA"). See 29 U.S.C. § 1002(1).

On July 16, 2015, DuPont moved to dismiss Stevens's amended complaint for failure to state a claim upon which relief can be granted because Stevens's three state-law tort claims are preempted by ERISA or (if not preempted) barred by North Carolina's three-year statute of limitations. See [D.E. 18, 19]; 29 U.S.C. § 1144(a); N.C. Gen. Stat. § 1-52(5), (9). On August 7, 2015, Stevens responded in opposition. See [D.E. 28]. On August 21, 2015, DuPont replied. See [D.E. 30]. As explained below, the court grants DuPont's motion to dismiss.

I.

Stevens is a former DuPont employee. See Am. Compl. [D.E. 12] ¶¶ 6, 8. From 2004 to 2006, Stevens complained internally concerning alleged violations of federal law arising from a DuPont stock program. See id. ¶¶ 9–16. Due to Stevens's complaints, DuPont altered the stock program. See id. ¶¶ 17–23. According to Stevens, DuPont executives were upset with his complaints, retaliated against him, and denied him a promotion. See id. ¶¶ 24–31. As a result, Stevens decided to leave DuPont and negotiated a "Departure Agreement." See id. ¶¶ 30–34. In the Departure Agreement, which is dated July 24, 2007, DuPont agreed to provide Stevens special consideration "outside, and in addition to, the standard DuPont Pension and Health Care Retirement Plans . . . ." Id. ¶ 35; see [D.E. 12-1] 4 (Exhibit A to amended complaint, which references Steven's entitlement to "DuPont-provided health care coverage for 12 months following separation; thereafter eligible to participate in DuPont retiree health care coverage. DuPont will pay to you the sum of $6,000 for the purchase of retiree medical and dental insurance prior to age 50."). "The Special Consideration included specific compensation for: lost regular salary and bonus pay due to retaliation which impacted Stevens'[s] progression path, pension income loss due to very early retirement, unexpected and additional long term health care premium cost, and attorney fee cost." Id. ¶ 36. Essentially, Stevens alleges that, while negotiating the Departure Agreement, DuPont told him that his monthly health care costs under DuPont's medical plan ("the Plan") would be $412 per month, but the costs turned out to be much higher. See Am. Compl. ¶¶ 36–77. Stevens learned of the discrepancy in 2008 when DuPont notified him that his healthcare costs for 2009 would be $567—not $412—per month. See Am. Compl. ¶ 54. On November 19, 2008, Stevens notified DuPont of this "healthcare cost discrepancy," but he never resolved the issue with DuPont and his monthly health care costs under the Plan remained much higher than $412 per month. See id. ¶¶

2

56–77. Relying upon DuPont's incorrect statement of his monthly health care costs, Stevens failed to negotiate a sufficient lump-sum payment from DuPont for his health care costs. See id. ¶ 40.

In May 2015, Stevens filed suit in North Carolina state court and asserted three tort claims under North Carolina law: (1) negligent misrepresentation concerning his monthly health care costs under DuPont's Plan; (2) constructive fraud concerning his monthly health care costs under DuPont's Plan; and (3) fraud concerning his monthly health care costs under DuPont's Plan. See [D.E. 1-1] (state court complaint); Am. Compl. ¶¶ 78–107. Stevens seeks compensatory damages of at least $60,000 per claim, punitive damages on his fraud and constructive fraud claims, costs, and attorney's fees. See Am. Compl. 17 (Request for Relief). DuPont timely removed the action to this court based on federal question and diversity jurisdiction, see [D.E. 1, 25], and moved to dismiss Steven's amended complaint for failure to state a claim upon which relief can be granted. [D.E. 18, 19]; see Fed. R. Civ. P. 12(b)(6).

II.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal and factual sufficiency of a complaint. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S. Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). Although a court "assume[s] the facts alleged in the complaint are true and draw[s] all reasonable factual inferences in [plaintiff's] favor," Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002), it need not accept a complaint's legal conclusions. See Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79.

3

DuPont argues that ERISA preempts Stevens's North Carolina fraud, constructive fraud, and negligent misrepresentation claims. See Def.'s Mem. Supp. Mot. Dism. Am. Compl. [D.E. 19] 3–6. Preemption is based on Congress's power to "take unto itself all regulatory authority over [a given topic]." Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947); see M'Culloch v. Maryland, 17 U.S. 316, 405–06 (1819). The preemption doctrine stems from the Supremacy Clause, U.S. Const., art. VI, cl. 2, and renders a state provision impotent when Congress enacts a conflicting federal provision intending to displace state law. Maryland v. Louisiana, 451 U.S. 725, 746 (1981). A court, however, begins "with the basic assumption that Congress did not intend to displace state law." Id. at 746–47; see Rice, 331 U.S. at 230. Evidence of Congress's intent to preempt may overcome this basic assumption. Maryland, 451 U.S. at 746. Analyzing a statute's preemptive effect "is essentially a two-step process of first ascertaining the construction of the [federal statute and putatively-preempted state law] and then determining the constitutional question whether they are in conflict." Perez v. Campbell, 402 U.S. 637, 644 (1971); see Chi. & Nw. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311, 317–18 (1981).

Preemption may be express or implied. Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141, 152–53 (1982); see Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977); Cox v. Shalala, 112 F.3d 151, 154 (4th Cir. 1997). Congress expressly preempts state law "by directly stating its intention to do so." Cox, 112 F.3d at 154. Even when Congress includes an express preemption clause in a statute, a court still must carefully construe Congress's intended breadth of the preemption clause. See, e.g., Altria Grp., Inc. v. Good, 555 U.S. 70, 77 (2008). When a preemption clause "is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption." Id. (quotation omitted).

ERISA contains an express preemption provision, which states, "the provisions of this

4

subchapter and subchapter III of this chapter shall supersede **any and all** State laws insofar as they may now or hereafter **relate to** any employee benefit plan . . . ." 29 U.S.C. § 1144(a) (emphasis added). Congress defined ERISA's preemptive scope broadly: "any and all" state laws "relat[ing] to" its subject matter, "employee benefit plan[s]." See id. ERISA defines "employee benefit plan" to include "any plan, fund, or program . . . established or maintained by an employer . . . for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, or unemployment . . . ." Id. § 1002(1).

"A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96–97 (1983); see Aetna Health Inc. v. Davila, 542 U.S. 200, 208–10 (2004); Rush Prudential HMO, Inc. v. Moran, 536 U.S. 355, 364 (2002); Egelhoff v. Egelhoff ex rel. Breiner, 532 U.S. 141, 146–49 (2001); Unum Life Ins. Co. of Am. v. Ward, 526 U.S. 358, 363 (1999); Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44–48 (1987), abrogated in part on other grounds by Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329 (2003); Great-W. Life & Annuity Ins. Co. v. Info. Sys. & Networks Corp., 523 F.3d 266, 270 (4th Cir. 2008). Thus, ERISA preempts state laws "not specifically designed to affect such plans;" state laws that indirectly affect such employee benefit plans; and state laws that are "consistent with ERISA's substantive requirements." Dist. of Columbia v. Greater Wash. Bd. of Trade, 506 U.S. 125, 129–30 (1992) (citation and quotations omitted); see Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990); Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 739 (1985). ERISA preemption applies to state statutes and state common law. See, e.g., Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc., 791 F.3d 436, 447 (4th Cir. 2015).

5

The preemptive scope of section 1144(a) is not limitless. See N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655 (1995) ("If 'relate to' were taken to extend to the furthest stretch of its indeterminancy, then . . . pre-emption would never run its course . . . [and] that . . . would . . . read Congress's words of limitation as [a] mere sham, and . . . read the presumption against pre-emption out of the law . . . ."). Accordingly, a court should "go beyond the unhelpful text . . . and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive" when determining whether section 1144(a) overcomes the normal presumption against preemption. Id. at 656; see De Buono v. NYSA-ILA Med. & Clinical Servs. Fund, 520 U.S. 806, 813–14 (1997). ERISA does not preempt state law when the effect the state law has on covered plans is "too tenuous, remote, or peripheral . . . to warrant a finding that the law 'relates to' the plan." Shaw, 463 U.S. at 100 n.21.

"[I]n light of the objectives of ERISA and its preemption clause, Congress intended ERISA to preempt at least three categories of state laws that can be said to have a connection with an ERISA plan." Coyne & Delany Co. v. Selman, 98 F.3d 1457, 1468 (4th Cir. 1996). These categories are (1) "state laws that mandate employee benefit structures or their administration;" (2) "state laws that bind employers or plan administrators to particular choices or preclude uniform administrative practice;" and (3) state laws that provide "alternate enforcement mechanisms for employees to obtain ERISA plan benefits." Id. (quotations and alteration omitted). A state-law claim provides "an alternate enforcement mechanism" for obtaining ERISA plan benefits when it rests on the same allegations that support an ERISA claim and is brought by an employee against a defendant owing a plan-created fiduciary duty to the employee. See Wilmington Shipping Co. v. New Eng. Life Ins. Co., 496 F.3d 326, 341–44 (4th Cir. 2007) ("Nor may parties avoid ERISA's preemptive reach by recasting otherwise preempted claims as state-law contract and tort claims."); see also Aetna Health

6

Inc., 542 U.S. at 212–14 (holding that state-law claims are preempted when the terms of benefit plans form an essential part of the state-law claim and liability under state law would not exist absent a plaintiff's participation in an ERISA-covered plan). Additionally, a state-law claim triggers ERISA preemption when allowing the claim to proceed would have "an effect on the primary administrative functions of benefit plans, such as determining an employee's eligibility for a benefit and the amount of that benefit." Gresham v. Lumbermen's Mut. Cas. Co., 404 F.3d 253, 258 (4th Cir. 2005) (quotation omitted). ERISA does not, however, preempt generally applicable state-law claims that do not implicate relations between the traditional principals of an ERISA plan (the employer, the plan, the plan fiduciaries, and the plan beneficiaries). See Custer v. Sweeney, 89 F.3d 1156, 1167 (4th Cir. 1996) (holding that ERISA does not preempt state-law legal malpractice actions against attorneys representing ERISA plans).

The Fourth Circuit has held that "[g]enerally speaking, ERISA preempts state common law claims of fraudulent or negligent misrepresentation when the false representations concern the existence or extent of benefits under an employee benefit plan." Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d 371, 378 (4th Cir. 2001). In Griggs, the Fourth Circuit held that when the claim "is premised on the existence of an employee benefit plan so that in order to prevail, a plaintiff must plead, and the court must find, that an ERISA plan exists, ERISA preemption will apply." Id. (citation and quotations omitted); see Ingersoll-Rand, 498 U.S. at 140; Pilot Life Ins. Co., 481 U.S. at 52–55 (holding that because of its "comprehensive civil enforcement scheme," ERISA preempted plaintiff's state-law fraud claim); cf. LeBlanc v. Cahill, 153 F.3d 134, 147–48 (4th Cir. 1998) (holding that ERISA did not preempt a state-law fraud claim brought by plan trustees against a third party who allegedly induced the trustees to invest plan funds in a fraudulent investment scheme,

7

because the generally applicable common law action did not implicate relations among the ERISA plan principals).

Stevens's health care benefits, including the amount Stevens must pay toward his premiums under the Plan, are governed by the Plan. See [D.E. 1-2] (copy of the Plan). Pursuant to Stevens's Departure Agreement, Stevens is eligible "for DuPont provided health care coverage for 12 months following separation; thereafter, eligible to participate in DuPont retiree health care coverage." [D.E. 12-1] 4. To offset a portion of the premium cost under the Plan, DuPont agreed to pay Stevens "$6,000 for the purchase of retiree medical and dental insurance prior to age 50." [D.E. 12-1] 4. Thus, ERISA preempts Stevens's three tort claims because his three state-law claims "relate to" DuPont's "employee benefit plan" under ERISA. See, e.g., Egelhoff, 532 U.S. at 146–49; Greater Wash. Bd. of Trade, 506 U.S. at 129; Pilot Life Ins. Co., 481 U.S. at 44–48; Griggs, 237 F.3d at 378; Elmore v. Cone Mills Corp., 23 F.3d 855, 863 (4th Cir. 1994) (en banc); see also Otero Carrasquillo v. Pharmacia Corp., 466 F.3d 13, 20 (1st Cir. 2006); Hall v. Blue Cross/Blue Shield of Ala., 134 F.3d 1063, 1065–66 (11th Cir. 1998); Smith v. Dunham-Bush, Inc., 959 F.2d 6, 8–10 (2d Cir. 1992); Lister v. Stark, 890 F.2d 941, 942–46 (7th Cir. 1989).

In opposition to this conclusion, Stevens argues that his three North Carolina tort claims concern a one-time, lump sum settlement payment under his Departure Agreement and do not relate to DuPont's Plan. See Pl. Mem. Opp'n [D.E. 28] 4–8. In support, Stevens cites Forth Halifax Packing Company v. Coyne, 482 U.S. 1 (1987), and Pizlo v. Bethlehem Steel Corporation, 884 F.2d 116 (4th Cir. 1989).

In Forth Halifax Packing Company, the Supreme Court held that ERISA did not preempt a Maine statute requiring employers to provide to employees a one-time severance payment upon a plant closing. See Forth Halifax Packing Co., 482 U.S. at 3–4. In reaching this conclusion, the

8

Supreme Court noted that the Maine statute did not "relate to" any "employee benefit plan" within the meaning of ERISA. Id. at 7–8. Furthermore, preemption of the Maine statute would not further ERISA's purpose. See id. at 9–19. Because the Maine law related to an employee benefit (i.e., a severance payment), not an "employee benefit **plan**" under ERISA, preemption did not apply. See id. at 19. In contrast to the Maine statute at issue in Forth Halifax Packing Company, which "related to" only a particular employee benefit, Stevens's claims all arise under North Carolina law and "relate to" DuPont's **Plan**, which is an "employee benefit plan" under ERISA. See 29 U.S.C. § 1002(1); cf. [D.E. 1-2] (copy of the Plan).

In Pizlo, the Fourth Circuit held that ERISA did not preempt plaintiffs' claims of wrongful termination from employment after an alleged oral contract of employment for a definite term. See Pizlo, 884 F.2d at 120. In reaching this conclusion, the Fourth Circuit noted that plaintiffs' state-law claims concerning the termination of the oral contract of employment did not relate to "relate to" the employee benefit plan. Id. Rather, the employee benefit plan was implicated only as a means of computing a portion of plaintiffs' compensatory damages, which would include (in part) the lost pension benefits that plaintiffs would have received but for the alleged wrongful termination. See id. at 120–21.

In contrast to Pizlo, Stevens contests his entitlement to benefits under the Plan at a given cost. See Am. Compl. ¶¶ 42–43, 56–60, 63–64, 71–72 (asserting that DuPont told Stevens that his monthly health care cost under the Plan would be $412, but that the monthly increased drastically). As such, to resolve Stevens's claims, the court must review DuPont's Plan and its costs. See, e.g., Warren v. Blue Cross & Blue Shield of S.C., 129 F.3d 118, 1997 WL 701413, at *2–4 (4th Cir. 1997) (per curiam) (unpublished table opinion); Korman v. MAMSI Life & Health Ins., Co., 121 F. Supp. 2d 843, 846–48 & n. 4 (D. Md. 2000). Furthermore, if Stevens prevailed, the court could

9

order DuPont to permit Stevens to participate in the Plan at a cost lower than that required of all other Plan participants. Thus, Stevens's claims "relate to" DuPont's Plan, and ERISA preemption applies. See, e.g., Egelhoff, 532 U.S. at 146–49; Greater Wash. Bd. of Trade, 506 U.S. at 129; Pilot Life Ins. Co., 481 U.S. at 44–48; Griggs, 237 F.3d at 378; Elmore, 23 F.3d at 863; Hall, 134 F.3d at 1065–66; Smith, 959 F.2d at 8; Lister, 890 F.2d at 942–44. Accordingly, the court grants DuPont's motion to dismiss.

Alternatively, even if ERISA does not preempt Stevens's three tort claims, his claims are barred by the statute of limitations. Under North Carolina law, Stevens had to file his fraud and constructive fraud claims within three years from the date the alleged fraud was, or reasonably should have been, discovered. See, e.g., N.C. Gen. Stat. § 1-52(9); Crogan v. Crogan, 763 S.E.2d 163, 165–66 (N.C. Ct. App. 2014); Philips v. Pitt Cty. Mem. Hosp., Inc., 222 N.C. App. 511, 521–22, 731 S.E.2d 462, 469–70 (2012); Carlisle v. Keith, 169 N.C. App. 674, 685, 614 S.E.2d 542, 549–50 (2005); Hiatt v. Burlington Indus., Inc., 55 N.C. App. 523, 526, 286 S.E.2d 566, 568 (1982). Similarly, under North Carolina law, Steven had to file his negligent misrepresentation claim within three years of the date (1) the alleged misrepresentation was made or reasonably should have been discovered and (2) he suffered harm from the misrepresentation. See, e.g., N.C. Gen. Stat. § 1-52(5); Barger v. McKoy Hillard & Parks, 346 N.C. 650, 664, 488 S.E.2d 215, 223–24 (1997); Carlisle, 169 N.C. App. at 684, 614 S.E.2d at 549.

Stevens alleges that in 2008, he learned that his health care costs would not be $412 per month, but would be $567 per month for 2009. See Am. Compl. ¶ 54. In November 2008, Stevens contacted DuPont about the discrepancy between the promised $412 per month cost and the actual $567 per month cost. See id. ¶ 56. Stevens never resolved this dispute with DuPont, and his health care costs have exceeded $412 per month since January 1, 2009. Thus, no later than January 1, 2009,

10

Stevens knew that his premium under DuPont's Plan was more than $412 per month. Steven, however, waited until May 2015 to file suit in state court. See [D.E. 1-1] Ex. A. Accordingly, the three-year statute of limitations bars Stevens's three tort claims. In light of this conclusion, the court need not address DuPont's other, alternative arguments in support of its motion to dismiss. See Def.'s Mem. Supp. Mot. Dism. Am. Compl. 9–14; Def.'s Repl. [D.E. 30] 6–10.

III.

In sum, defendant's motion to dismiss [D.E. 18] is GRANTED, and the court DISMISSES plaintiff's amended complaint for failure to state a claim upon which relief can be granted. Defendant's motion to strike plaintiff's demand for a jury trial [D.E. 20] is DISMISSED as moot. The clerk shall close the case.

SO ORDERED. This 16 day of November 2015.

JAMES C. DEVER III
Chief United States District Judge